[No. 28431. Department Two. January 3, 1942.]

*In the Matter of the Guardianship of* HARRY N. GADDIS, *an Incompetent Person.*

FRANK T. HINES, *as Administrator of Veterans' Affairs, et al., Appellants,* v. ESTHER H. GADDIS, *as Executrix, et al., Respondents.*[1]

[1] Reported in 120 P. (2d) 849.

*Lester E. Pope,* for appellants.

*Robert B. Abel,* for respondents.

JEFFERS, J.—This is an appeal from what is designated a "Final Order," made and entered by the superior court for Pierce county, in the matter of the guardianship of Harry N. Gaddis, a mentally incompetent person.

On July 24, 1920, Ivy T. Gaddis, mother of Harry N. Gaddis, filed a petition in the superior court for Grays Harbor county, wherein she requested that she be appointed guardian of Harry N. Gaddis, a mentally incompetent person. The petition alleged that the incompetent was living with petitioner, under her care and control, at Elma, in Grays Harbor county, and that the incompetency of Harry N. Gaddis was caused by his military service in the United States army during the World War; that the incompetent had certain property, to wit, the sum of one thousand dollars, which was held by the United States, and that this property needed care and attention.

After the filing of the petition, an order was made, fixing the time for a hearing on the petition. On

August 14, 1920, after a hearing, it appearing to the court that due and proper notice of such hearing had been given to all persons required by the statute to be notified, an order was made and entered, appointing Ivy T. Gaddis guardian of the person and estate of the incompetent. The guardian thereafter qualified by taking the oath and giving a bond, as by law required, and on April 22, 1925, filed her first report, thereafter filing five reports, covering transactions up to and including July 29, 1933. Notices of hearing on these reports were given, as required by law, and notice was also given to the United States Veterans' Bureau, which had filed a written request that all papers concerning the guardianship be served on it.

The guardian, on October 22, 1926, also filed a supplemental report, in which she asked that she be given permission to deduct from the funds of the ward in her possession the sum of $1,040, expended by her for the benefit of the ward prior to the appointment of a guardian. Also, at various times the guardian filed petitions for permission to invest certain funds in her hands as guardian. Among such petitions is one filed February 3, 1930, asking permission to invest fifteen hundred dollars in first mortgage bonds upon the Marine building, in Vancouver, B. C., guaranteed by G. A. Stimpson & Company, and a sum not to exceed one thousand dollars in the Canadian National Railroad.

While we do not find any specific order authorizing the guardian to deposit funds of the ward in either the Peoples Savings & Loan Association of Tacoma, or the Pacific Savings & Loan Association of Tacoma, such deposits were undoubtedly called to the court's attention, as appears from the various reports.

All of the above reports were approved by the superior court of Grays Harbor county, without objection on the part of anyone, except that the veterans'

bureau did object to that part of the report of August 4, 1928, which asked that an allowance of twenty dollars a month be made to the guardian, and that an allowance of not to exceed twenty-five dollars per month be made for the care and support of the ward. The court also authorized the guardian to make investments. The last report above referred to shows cash on hand, $3,166.38, and investments as follows: Canadian victory bond, $500; United States liberty bonds, $2,000; mortgage, R. S. Steere, $1,000; mortgage, Marine building (in default), $1,500; residence, $3,500; total investments, $8,500. The report was approved October 24, 1933.

On December 27, 1933, Mrs. Gaddis filed in the superior court for Grays Harbor county what is termed "Final Report and Petition for Discharge." It is alleged in this report that petitioner has been informed that the incompetent will be permanently confined in the United States veterans' hospital, at American Lake, Pierce county, Washington; that petitioner is now residing in Tacoma, and intends to permanently reside there; that petitioner has been, by the superior court of Pierce county, appointed guardian of the estate of Harry N. Gaddis, and that it is to the best interest of the ward's estate that the guardianship proceedings be maintained in Pierce county; that on October 24, 1933, the court entered an order approving the annual report of the guardian to July 31, 1933. It is further alleged that petitioner will be required to report to the superior court of Pierce county for all assets in her possession, and all income received by her since the last annual report to the superior court for Grays Harbor county; that petitioner submits the last annual report filed by the petitioner on October 13, 1933, as a final statement of the guardianship account in the superior court for Grays Harbor county, and petitions the court to dis-

charge her as guardian of the estate and close the guardianship proceedings in that court.

Notice of hearing on the last report was also served on the veterans' bureau, no objection being made thereto, and on January 9, 1934, the superior court for Grays Harbor county made an order, the material part of which is as follows:

"It is ordered that the final report of Ivy T. Gaddis as guardian, be and the same is hereby approved, and as guardian in Grays Harbor county, Washington, she be authorized to disburse to herself as guardian in Pierce county, Washington, all the assets in the guardianship estate, and upon such disbursement being made she be discharged as guardian, and her bondsmen released from any and all further liability."

It also appears that, on the same date (January 9, 1934), the superior court for Grays Harbor county entered an order which recites that the guardian has at all times had possession, and is now in possession, of all the property referred to in the final order, and that it is

"Ordered that Ivy T. Gaddis be and she is hereby discharged as guardian of the estate of Harry N. Gaddis in the above entitled court, and her bondsmen, and all her bondsmen, be and they are hereby exonerated from any and all further liability in each of the bonds filed in the above guardianship proceedings."

It appears that under order of court three different bonds had been filed by the guardian, upon which the National Surety Company was surety.

We now come to the proceedings in the superior court for Pierce county.

Prior to the purported discharge of the guardian in Grays Harbor county, and on November 23, 1933, Ivy T. Gaddis filed in the superior court for Pierce county a petition asking that she be appointed guardian of the estate of Harry N. Gaddis, an incompetent. It is alleged

in this petition that the incompetent at the present time and for several years past has been a patient at the United States veterans' hospital at American Lake, Pierce county, Washington, and has property needing the care and attention of a guardian in Pierce county; that petitioner for several years has been and now is the duly appointed, qualified, and acting guardian of the estate of Harry N. Gaddis, in the superior court for Grays Harbor county; that petitioner has petitioned the superior court for Grays Harbor county to close the guardianship in Grays Harbor county, upon her appointment as guardian in Pierce county, this for the reason that the ward is now a patient at the institution above mentioned, and petitioner has been advised that he will be a patient at that institution for many years to come, and petitioner is now residing permanently in Tacoma, Pierce county, Washington; that the assets consist of $3,166.38 cash in the Bank of California and various savings and loan associations, and investments amounting to $8,500.

On December 27, 1933, the court, after a hearing, entered an order appointing Ivy T. Gaddis guardian of the estate of the incompetent. Mrs. Gaddis thereafter qualified by taking the oath and giving a bond, with the National Surety Company as surety, and the guardian thereafter continued to act as such up to the date of her death, which occurred on January 1, 1940.

During the time Mrs. Gaddis acted as guardian, she filed various reports with the superior court for Pierce county, beginning with January 8, 1934, and ending with the report filed October 28, 1939, covering acts of the guardian up to July 31, 1939.

On February 8, 1940, Esther H. Gaddis petitioned the superior court for Pierce county to appoint her as guardian of the estate of her brother, Harry N. Gaddis.

In her petition she set out the death of her mother, Ivy T. Gaddis, and other facts. The court fixed a time for the hearing on this petition. Frank T. Hines, administrator of veterans' affairs, appeared and filed objections to the appointment of Esther H. Gaddis, as guardian of the estate of the incompetent, and suggested that the Bank of California, N. A., of Tacoma, be appointed. Thereafter Esther H. Gaddis joined in a petition to have the Bank of California appointed guardian of the estate of the incompetent, but asked that she be appointed guardian of his person. On March 27, 1940, the court entered two orders, one appointing the Bank of California, N. A., guardian of the estate of the incompetent, and the other appointing Esther H. Gaddis guardian of the person of the incompetent. Both guardians qualified by taking the oath and giving bonds as required by law and the court.

On April 1, 1940, Esther H. Gaddis, as executrix of the estate of Ivy T. Gaddis, deceased, filed on behalf of the deceased what purported to be a final report and petition for distribution. This report shows total deposits of $6,042.94, and other assets, $7,550. Frank T. Hines, administrator of veterans' affairs, again appeared and objected to this report. Specific objection was made by the administrator to the closing of the guardianship and discharging the bondsmen. The above objections were apparently based on the further objection to the restricted amounts shown on deposit with Peoples Savings & Loan Association and the Alpha Corporation. Objection was also made to the allowance to the guardian, by the Grays Harbor county, of $1,040, expended by the guardian, prior to her appointment, for the benefit of the ward. Objection was also made to the purported investment in first mortgage bonds of the Marine building, in Vancouver, it

being contended that the investment was not secured by a mortgage on the Marine building. The Bank of California, as guardian, also filed objection to the report, both objectors appearing by Mr. Pope, attorney for the veterans' bureau.

On June 12, 1940, the court ordered Esther H. Gaddis to turn over to the Bank of California the sum of twenty-five hundred dollars, then on deposit with the bank, and a certain mortgage on property of one R. S. Steere. On October 21, 1940, Esther H. Gaddis and National Surety Company filed an answer to the objections of the administrator of veterans' affairs and the Bank of California, and on February 3, 1941, the matter came on for hearing before the court. After a hearing at which all parties were represented, the court made and entered an order approving the final report filed by Esther H. Gaddis on behalf of her mother, Ivy T. Gaddis, with the exception of a claim for funeral expenses of Ivy T. Gaddis, which the court denied. It was further ordered that Esther H. Gaddis deliver to the Bank of California all property of the incompetent in her possession, and that, upon filing a receipt showing such distribution had been made, the guardian's estate be discharged and the National Surety Company be exonerated upon any and all liability in the guardianship. It is from this order of February 3, 1941, that Frank T. Hines, as administrator of veterans' affairs, and the Bank of California, N. A., as guardian, have appealed.

Appellants' assignments of error are based upon the claimed failure of the court to hold the estate of Ivy T. Gaddis and her surety liable to the ward's estate for certain investments made by Ivy T. Gaddis, as guardian, and the allowance of $1,040 made to Ivy T. Gaddis, hereinbefore referred to. In view of the con-

clusion reached herein, it will not be necessary to set out in detail the above transactions.

We are confronted at the outset with the question of jurisdiction of the superior court for Pierce county to entertain the proceedings from which this appeal is taken. Counsel for both parties to this appeal fail to stress this question; in fact, it is not seriously argued by either side. The question here presented is of first impression in this state, nor have we been able to find where it has been presented to any court, in the form now before us.

The procedure followed in this case, whereby it was attempted to transfer the guardianship administration from one county to another, is, to say the least, unique. We have found no case where a similar procedure was attempted. There is nothing in this record to indicate that any of the parties were attempting at any time to work a fraud either upon the courts or upon any other interests. On the contrary, the acts of all concerned in the attempted transfer appear to have been motivated solely out of a desire to make the administration of the ward's estate more convenient. The courts of both Grays Harbor and Pierce counties were fully informed by the guardian of the whole procedure and its purpose, and all persons who had any interest in the matter were informed and aware of the proceedings and their purpose, they either acquiescing or participating therein.

Counsel have apparently assumed that the residence of the incompetent was changed from Grays Harbor county to Pierce county. We seriously doubt that it can be said that, by involuntarily confining Harry H. Gaddis in the hospital in Pierce county, his residence was changed, but, in any event, we do not believe it makes any difference in this case whether it be assumed his residence was changed or not.

■ Rem. Rev. Stat., § 1565 [P. C. § 9897], provides:

"The superior court of each county shall have power to appoint guardians for the persons and estates, or either thereof, of minors, insane and mentally incompetent persons resident of the county, and guardians for the estates of all such persons who are nonresidents of the state but who have property in such county needing care and attention."

We are of the opinion that, as to an incompetent person who is a resident of this state, only the superior court of the county in which he resides has authority to appoint a guardian of his person and estate, or either thereof. It seems to us the jurisdiction is exclusive, and that no other superior court in the state has that jurisdiction.

■ When a guardian has been appointed and has qualified, the court acquires general jurisdiction over the estate of the ward. *Jorgenson v. Winter*, 69 Wash. 573, 125 Pac. 957. The guardian, in so far as matters pertaining to his trust are concerned, is directly responsible only to the court of his appointment. Rem. Rev. Stat., § 1572 [P. C. § 9904]. The guardian is in effect an agent of the court, and through him the court seeks to protect the ward's interest. It would seem to follow, therefore, that the court which appoints a guardian is required by statute to continue the supervisory control of the ward's estate throughout its administration. This jurisdiction, exclusive as to the appointment of a guardian, likewise remains statewide and exclusive as to the continuous administration of the ward's estate until the matter is finally and completely disposed of. *State ex rel. Greenberger v. Superior Court*, 134 Wash. 400, 235 Pac. 957.

There is no provision in the statute directly authorizing a transfer of this jurisdiction to the superior court of any other county. Nor do we believe there is any statute from which such authority can be implied.

Rem. Rev. Stat., §§ 1589 and 1590 [P. C. §§ 9931 and 9932], are the only sections which it might be argued authorize such a transfer, but as we read those sections we are convinced they cannot be construed as a grant of such authority. It is undoubtedly true they do grant broad powers to each superior court in the administration and settlement of estates within its jurisdiction, but, in our opinion, this grant does not purport to empower a superior court to totally divest itself of the very authority there being conferred, as was attempted in the instant case.

The only statutory provision we have been able to find, with reference to the appointment of a subsequent guardian after the authority of the original guardian has been terminated, is Rem. Rev. Stat., § 1579 [P. C. § 9911], which provides for the appointment of a successor guardian by the same court which had jurisdiction over the guardianship proceedings, when the former guardian has died or has been removed. It surely cannot be construed as giving to another superior court the power and authority to appoint a successor guardian.

We are clearly of the opinion that, so long as the ward remains subject to his disability, and continues to reside within this state, the superior court which originally acquired jurisdiction retains the same, for all purposes connected with the administration of the ward's estate. A subsequent change of residence to a different county by the guardian, or the ward, or both of them, cannot confer upon the court of the new county of residence any jurisdiction over the guardianship matter. *State ex rel. Greenberger v. Superior Court, supra; North Carolina Bank & Trust Co. v. Parker*, 204 N. C. 54, 167 S. E. 495. See, also, 28 C. J. 1109, § 169.

Respondents contend that there were in effect

two entirely separate and distinct guardianship proceedings herein. They further contend, as we understand it, that the first, in Grays Harbor county, was completely terminated by the final order of January 9, 1934. Whether or not this is true must depend upon the power of the court for Grays Harbor county to enter such a final order terminating its authority to administer the ward's estate. There is no authority granted by the statutes, permitting a superior court to terminate its jurisdiction over the administration of a ward's estate at any time. There is, of course, implied authority to close the administration when its objects have been completely accomplished. We conclude that a superior court which has once properly acquired jurisdiction over the administration of an incompetent's estate cannot divest itself of that jurisdiction until such time as the conditions requiring the guardianship have ceased. Any order purporting to accomplish such a result before that time is void and of no effect. *Davis v. White,* 207 S. W. (Tex. Civ. App.) 679, affirmed 228 S. W. 154.

Even upon the death of the ward, or the restoration of his competency, judicially determined, the guardianship is deemed to continue, and jurisdiction to remain in the administering court until the ward's estate has been fully accounted for or restored and finally distributed. *In re Brown's Estate,* 6 Wn. (2d) 215, 101 P. (2d) 1003, 107 P. (2d) 1104. The particular guardianship, as such, may be terminated by death, removal, or resignation of the guardian, but termination of the particular guardianship has no effect upon the jurisdiction of the court to continue with the administration of the ward's estate. The court must then appoint a successor guardian, as is provided by Rem. Rev. Stat., § 1579, but the court's jurisdiction over the estate is unaffected, and the pendency of the action

continues until the matter is completely and finally disposed of. *State ex rel. Greenberger v. Superior Court, supra.* It is not so disposed of until the purposes for which a guardian was appointed have been accomplished.

It is true that, for convenience in the administration of guardianship matters, legislation might be passed authorizing a change of venue when a guardian and ward have taken up residence in a different county. Statutes to that effect have been passed in several states. However, we can see many disadvantages in such a proceeding, some of which are stated in *State ex rel. Greenberger v. Superior Court, supra.* But be this as it may, we think it is a matter for legislative consideration, and until such time as the legislature has acted we are satisfied that a superior court is without authority to divest itself of jurisdiction in order to enable such a transfer as was here attempted to be made.

While it was in a different type of case, a somewhat similar problem was before this court in *Tennyson v. Department of Labor & Industries,* 189 Wash. 616, 66 P. (2d) 314, where we held that, in the absence of any statutory authorization, the superior court of the county of the applicant's residence could not divest itself of jurisdiction over an appeal in a workmen's compensation case, by transferring the cause to a different county, even though the applicant had, subsequent to taking his appeal to the superior court for Grays Harbor county, become a resident of Clallam county, to which the cause was transferred. The order entered by the superior court of the latter county was held void for want of jurisdiction.

In so far as the order of the superior court for Grays Harbor county entered January 9, 1934, purported to finally terminate that court's jurisdiction over the

ward's estate, the order was void, and must be treated as a nullity. In spite of that order, jurisdiction to administer the ward's estate remained in the superior court for Grays Harbor county. This jurisdiction continued to be exclusive, and it follows that all acts done by the superior court for Pierce county, relative to the administration of the ward's estate, were void for want of jurisdiction.

The conclusion we have reached herein makes it impossible for us to consider this appeal on its merits. The liability, if any, of the estate of Ivy T. Gaddis and her bondsmen, during the time she administered the ward's estate, can only be determined by the superior court for Grays Harbor county.

We fully appreciate the situation in which this estate may be left temporarily, but we assume those interested in the matter will immediately take what they consider to be the proper steps to have a successor guardian appointed in Grays Harbor county, and will proceed to obtain reports to be filed in Grays Harbor county, from or on behalf of those who have purported to act as guardian of the ward's estate in Pierce county.

The judgment appealed from is reversed, and the cause remanded, with directions to dismiss the action, without prejudice to any proceeding which may be subsequently brought in the superior court for Grays Harbor county.

ROBINSON, C. J., BEALS, BLAKE, and SIMPSON, JJ., concur.