[No. 34764.   Department One.   March 19, 1959.]

*In the Matter of the Guardianship of* JUDITH LYNN FREITAS, *a Minor.*

THE STATE OF WASHINGTON, *on the Relation of Alphonso Freitas, Relator,* v. THE SUPERIOR COURT FOR KING COUNTY, *William J. Wilkins, Judge, Respondent.*[1]

[1]Reported in 336 P. (2d) 865.

*Bogle, Bogle & Gates* and *J. Kenneth Brody*, for relator.

*John R. Stair* and *George R. LaBissoniere*, for respondent.

HUNTER, J.—The relator has asked this court to review by certiorari an order of the superior court of King county overruling his demurrer to a petition filed by Ella Manlowe in the juvenile court of that county. The proceedings leading up to the application for a writ of certiorari may be summarized as follows:

Relator is a resident of Honolulu, T. H., and the father of Judith Lynn Freitas, a minor age thirteen and one-half years. On February 2, 1957, while Judith and her mother, Dorothy E. Freitas, were visiting Judith's aunt, Ella Manlowe, in Seattle, Washington, Mrs. Freitas died.

On June 21, 1957, in the superior court of King county, in probate, Ella Manlowe filed her petition to be appointed guardian of the person and estate of Judith, alleging therein that the minor was presently residing with her at Kirkland, Washington; that Alphonso Freitas (relator) was living in the Territory of Hawaii, and was not a fit and proper person to have the care, custody and control of his daughter or of her estate; and praying that the court enter a decree appointing the petitioner as the guardian of the person and estate of Judith Lynn Freitas.

June 21, 1957, in an *ex parte* hearing, Ella Manlowe was appointed the temporary guardian of the person and estate of Judith Lynn Freitas, pending a hearing on the matter.

July 22, 1957, the *ex parte* order was vacated on motion of the relator but his demurrer to the petition for appointment of a temporary guardian was overruled. The court appointed Ella Manlowe as temporary guardian of the minor pending a final hearing on objections to the petition for the aunt's appointment.

November 12, 1957, the cause came on for hearing. At the conclusion of the trial, the court orally announced its opinion that the record did not contain evidence of unfitness of the relator by reason of which he could be deprived of the custody of his daughter, but, nevertheless, urged the parties to work out some agreement that would not interrupt the minor's school term.

February 10, 1958, the petitioner filed a motion to reopen the matter for the purpose of taking additional evidence. The motion was granted over the relator's objection.

April 28, 1958, the hearing was held which continued through April 29, 1958. *On the latter date, counsel for Ella Manlowe announced that he had caused to be filed in the juvenile court of King county, a petition alleging that the minor was a dependent child and praying that the juvenile court, after investigation and hearing, enter an order with respect to her welfare.*

May 2, 1958, in the juvenile court action, relator demurred to the petition on all statutory grounds.

The juvenile court action was consolidated with the probate action on May 23, 1958; the trial judge of the probate court assumed jurisdiction as both a probate and juvenile court judge; entered an order overruling relator's demurrer, and continued the matter pending return of investigations by certain welfare agency facilities available to the juvenile court. Thereafter, relator filed an application for a writ to review such order in this court. His application was granted, and the matter is now before the court upon the return to the writ.

Relator first contends (1) that the juvenile court is without jurisdiction to proceed because there is no showing that the minor, Judith Lynn Freitas, is a delinquent or dependent child; (2) that the probate court having taken jurisdiction (as admitted on the face of the juvenile court petition), the child is no longer dependent in that she is now under the control and care of the probate court.

There being no issue of the minor's delinquency, the first issue then posed is: does the minor lose the status of a

dependent child during the pendency of the guardianship proceedings in the probate court?

The sections of the probate code pertaining to our inquiry provide in part:

RCW 11.88.010: "The superior court of each county shall have power to appoint guardians for the persons and estates, . . . of minors, . . . resident of the county, . . . and . . . all such persons who are nonresidents of the state but who have property in such county needing care and attention."

RCW 11.88.030: "Application for the appointment of a guardian shall be made by petition in writing, . . . setting forth facts essential to give the court jurisdiction of the case and stating that the minor, . . . *needs the care and attention of a guardian* . . ." (Italics ours.)

RCW 13.04.010, the juvenile court act, provides in part:

"This chapter shall be known as the 'Juvenile Court Law' and shall apply to all minor children under the age of eighteen years who are delinquent or *dependent*; and to any person or persons who are responsible for or contribute to, the delinquency or dependency of such children.

"For the purpose of this chapter the words 'dependent child' shall mean any child under the age of eighteen years:

" . . .

"(5) Who has no parent or guardian; or who has no parent or guardian willing to exercise, or capable of exercising, proper parental control; or

" . . .

"(7) Whose home by reason of neglect, cruelty or depravity of its parents or either of them, or on the part of its guardian, or on the part of the person in whose custody or care it may be, or for any other reason, is an unfit place for such child; or

" . . .

"(13) Whose father, mother, guardian or custodian is an habitual drunkard, or do not properly provide for such child, and it appears that such child is destitute of a suitable home or of adequate means of obtaining an honest living, or who is in danger or being brought up to lead an idle, dissolute or immoral life; or where such child is without proper means of support; . . ." (Italics ours.)

■■ The definition of a dependent child under these sections of the juvenile act (RCW 13.04.010) encompasses a

child, who "needs the care and attention of a guardian," over which the probate court has jurisdiction under RCW 11.88.030, *supra*. In this respect, both courts have concurrent jurisdiction to make inquiry into the welfare of a minor child, as was being done in this case. The status of the child necessarily does not change until the conclusion of this proceeding, at which time it is determined whether or not the care and attention of a guardian is needed.

The more troublesome problem, which is controlling in this case, is the question of another action pending between the same parties for the same cause, raised by the relator's demurrer. RCW 4.32.050 (3).

It cannot be denied that the inquiry of the juvenile court and the probate court was for the same purpose—the welfare of the minor child, Judith Lynn Freitas. The order of consolidation was admittedly for the purpose of invoking into the same inquiry, powers and facilities of the juvenile court, which were not available to the probate court. Does the juvenile court have jurisdiction to proceed in the inquiry over the objection of the relator when the probate court has first obtained jurisdiction?

This court was confronted with a similar situation in the case of *State ex. rel. Towne v. Superior Court*, 24 Wn. (2d) 441, 165 P. (2d) 862 (1946). There, the grandparents filed a petition in the Kitsap county superior court for adoption of their illegitimate granddaughter. Subsequent to the institution of the adoption proceeding, a petition was filed in the same county in juvenile court by another party who was desirous of adopting the child, instigating an inquiry into the child's dependency. After a hearing thereon, an order was entered adjudicating the minor child to be dependent and a ward of the court. In a review of this order by certiorari, we directed that all proceedings in the juvenile court be held in abeyance pending final adjudication of the adoption proceeding. We said:

"Of several assignments of error made by petitioners, we shall consider only one. The question raised is whether the juvenile court should not have held in abeyance proceedings on Mrs. Kaliszewski's petition of dependency until the adop-

tion proceedings instituted by the Townes in the superior court had been disposed of finally.

"The question, we think, must be resolved in favor of the petitioners upon the principle that, when the jurisdiction of two courts is invoked concerning the same subject of controversy, the court first obtaining jurisdiction *is vested with power to determine the controversy to the exclusion of the court the jurisdiction of which is last invoked. Territory v. Klee,* 1 Wash. 183, 23 Pac. 417; *State ex rel. Fidelity & Deposit Co. v. Superior Court,* 87 Wash. 498, 151 Pac. 1094; *State ex rel. Greenberger v. Superior Court,* 134 Wash. 400, 235 Pac. 957; *In re Gaddis,* 12 Wn. (2d) 114, 120 P. (2d) 849." (Italics ours.)

We further stated:

"Now, the subject matter of controversy in the instant case is the welfare and custody of the child. Under chapter 268, p. 828, Laws of 1943, the *superior court* of Kitsap county is vested with plenary power to inquire into and determine the subject matter in controversy. Of course, the juvenile court, under Rem. Rev. Stat., § 1987-1 *et seq.* [P. P. C. § 359-1] as amended, is vested with like powers. Whether the superior court's jurisdiction (having first been invoked) is exclusive as between it and the juvenile court of the same county, as is the case between superior courts of different counties, we are not called upon to decide, since petitioners ask only that the proceedings in the juvenile court be held in abeyance until the adoption proceedings in the superior court are finally determined. Under the facts disclosed by the record, we think that should be done."

In *State ex rel. Greenberger, supra,* cited in the *Towne* case, *supra,* we said:

". . . It is an accepted principle that, when a court of competent jurisdiction has become possessed of a case, its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed of, *and no court of co-ordinate authority is at liberty to interfere with its action.* In *MacLean v. Wayne Circuit Court,* 52 Mich. 257, it was said:

" 'It is a familiar principle that when a court of competent jurisdiction has become possessed of a case, its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed of; and no court of co-ordinate authority is at liberty to interfere with its

action. The principle is essential to the proper and orderly administration of the laws; and while its observance might be required on the grounds of judicial comity and courtesy, it does not rest upon such considerations exclusively, but is enforced to prevent unseemly, expensive and dangerous conflicts of jurisdiction and of process. If interference may come from one side, it may from the other also, and what is begun may be reciprocated indefinitely. The country has witnessed some such conflicts in which Federal and state courts of co-ordinate powers have unguardedly or unadvisedly undertaken to hamper or restrain each other's action; and the mischiefs of which such cases are suggestive are quite as likely to arise *when courts existing as part of the same system intrude with their process upon each other's authority.*' " (Italics ours.)

The reason for the application of the above stated rule may not be as compelling where the conflicting jurisdiction is between departments of the superior court in the same county, but substantially the same difficulties can arise, particularly in counties having different judges presiding in different departments of the superior court, as is demonstrated by the facts in the instant case.

However, we need go no further in this case than we did in the *Towne* case, *supra*. Holding the action of the juvenile court in abeyance pending the determination of the guardianship inquiry in the probate court would be sufficient to afford the uninhibited, orderly continuation of the probate proceeding.

█ It appears that the above problem of conflicting jurisdiction was attempted to be resolved by the order of consolidation. This does not change the operation of the rule. The consolidation of the juvenile court petition with the probate hearing by the juvenile court was an interruption and interference with the orderly procedure of the trial in the probate court by another court of concurrent jurisdiction, contrary to the established rule as announced in the *Greenberger* case, *supra*. The relator's demurrer should have been sustained on the ground of another action pending.

With the above disposition of the case, it is unnecessary to discuss further contentions. The order of the trial court

overruling relator's demurrer is reversed, and the trial court is directed to enter an order sustaining the demurrer, and a further order directing that all proceedings in the juvenile court be held in abeyance until the inquiry relating to the guardianship of the minor child in the probate proceedings has been finally adjudicated.

It is so ordered.

WEAVER, C. J., MALLERY, and FOSTER, JJ., concur.

HILL, J., concurs in the result.

May 6, 1959. Petition for rehearing denied.