232 P.3d 1140 (2010)
In the Matter of the GUARDIANSHIP OF Joseph R. MATTHEWS, Alleged Incompetent Person.
Sherwood Assisted Living, Inc., Appellant and Cross-Respondent,
v.
Michael Finn and Irma Matthews-Finn, Respondents and Cross-Appellants,
Rayna Abrahams, Defendant.
No. 38105-2-II.
Court of Appeals of Washington, Division 2.
May 18, 2010.
*1141 Gerald W. Grimes, Attorney at Law, Sequim, WA, Kathleen L. McCormick, Attorney at Law, Carlsborg, WA, for Respondents.
Craig Andrew Ritchie, Ritchie Law Firm PS, Port Angeles, WA, for Appellant/Cross-Respondent.
William Jeffrey Davis, Bell & Davis, Ronald Paul Bell, Attorney at Law, Sequim, WA, for Respondent/Cross-Appellant.
QUINN-BRINTNALL, J.
¶ 1 In this appeal, we clarify the duties and relationships of guardians ad litem (GALs) in the context of a guardianship petition filed under chapter 11.88 RCW on behalf of a resident of an assisted living facility.
¶ 2 When a State Ombudsman's Office investigation into Joseph Matthews's financial affairs suggested that his daughter, Irma Matthews-Finn, and her husband, Michael Finn, had converted his assets for their own use, Rena Keith, an employee of Sherwood *1142 Assisted Living, Inc. (Sherwood), petitioned the Clallam County Superior Court to establish a guardianship over Matthews and his estate. Rayna Abrahams, Matthews's court-appointed GAL, acquired a temporary restraining order (TRO) preventing the Finns from removing Matthews from Sherwood where he had lived for six years. The trial court substituted Sherwood for Keith as the petitioner and required that Sherwood post a $10,000.00 bond to maintain the TRO, preventing the Finns from relocating Matthews to California. When Sherwood declined to post the bond, the trial court dismissed the guardianship petition and awarded various fees and costs to the Finns, Abrahams, and their attorneys.
¶ 3 On appeal, Sherwood challenges the judgment requiring it to pay $10,000.00 in attorney fees to the Finns. The Finns cross-appeal, claiming that the $10,000.00 fee award is insufficient and requesting attorney fees on appeal. We hold Sherwood had no duty to pay the bond to maintain the TRO and, because failure to pay the bond formed the basis of the trial court's attorney fees award, the trial court abused its discretion when awarding attorney fees to the Finns. Accordingly, we reverse.

FACTS
¶ 4 On November 5, 2001, Matthews moved to Sherwood in Sequim, Washington. Matthews-Finn had a durable power of attorney over Matthews and authorized his move to Sherwood but, over time, she failed to make timely payments for his care. From January 2005 through December 2007, Matthews's account at Sherwood had a balance due ranging from $2,493.20 to $10,913.19. Although Sherwood received multiple payments each month on Matthews's account during this time, his account always had an outstanding balance.
¶ 5 On August 7, 2006, Sherwood sent a letter to the Finns informing them that Matthews's account had an outstanding balance and that failure to pay the bill would result in his eviction. In September 2006, the outstanding balance on Matthews's account decreased from $8,106.64 to $1,462.81 (an 81.96 percent reduction).
¶ 6 On October 26, 2007, Sherwood employee Keith filed a guardianship petition in Clallam County Superior Court for Matthews's person and estate. Keith filed in her personal capacity but she had assistance in drafting the petition from Sherwood's attorney, Erwin Jones. Based on an investigation and report by the State Ombudsman's Office of Matthews's financial affairs, Keith alleged that the Finns had violated their fiduciary duties to Matthews and requested that the trial court appoint a permanent guardian for Matthews. The trial court accepted the guardianship petition and appointed Abrahams as Matthews's GAL for the duration of the court proceedings.[1]
¶ 7 On December 10, 2007, the Finns sent a letter to Sherwood indicating their intent to move Matthews to a facility in California. On December 11, 2007, the trial court granted the GAL's request for a TRO to prevent the Finns from moving Matthews. Sherwood's attorney helped the GAL obtain the TRO. At this time, the trial court did not require a bond for the TRO.
¶ 8 The Finns received a copy of the guardianship petition and a copy of the TRO for the first time on December 14, 2007. They received notice of the guardianship hearing and a copy of a proposed guardianship order on December 24, 2007, and they obtained counsel on December 26, 2007. Sometime in December 2007, the Finns paid Matthews's account at Sherwood in full.[2] The Finns successfully intervened in the guardianship action.[3]
*1143 ¶ 9 On March 12, 2008, the Finns moved to either dissolve the TRO or to require Keith and Sherwood to post a $100,000.00 bond. The Finns alleged (1) a lack of notice of the TRO hearing; (2) monetary damages for retaining a bed at the California facility where they desired to move Matthews; (3) Abrahams sought the TRO to coerce them into paying off Matthews's debt at Sherwood, which the Finns asserted they paid off in December 2007; and (4) when the trial court considered the TRO petition, Abrahams did not disclose to the trial court the Finns' intent to move Matthews to California. On March 27, 2008, the trial court ordered "the Petitioner"[4] to post a $10,000.00 bond on or before April 15, 2008, or it would dissolve the TRO. Clerk's Papers (CP) at 126.
¶ 10 On April 3, 2008, Keith filed two motions with the trial court. First, Keith moved for the court to reconsider its March 27, 2008 order and shift the bond posting requirement to the GAL, here Abrahams, arguing that as the individual who actually obtained the TRO, Abrahams should post any bond. Second, Keith moved to substitute herself in her official Sherwood managerial capacity as the petitioner rather than remain a petitioner in her personal capacity. On April 11, 2008, the trial court heard these motions, substituted Sherwood as the guardianship petitioner, and, after extending the bond posting date to April 25, 2008, imposed the bond requirement on Sherwood. The trial court reduced its oral rulings to writing on April 24, 2008.
¶ 11 On April 22, 2008, Sherwood sought interlocutory review of the trial court's March 27, 2008 bond order. On April 24, 2008, we denied Sherwood's request for review but extended the deadline for entering the bond to May 9, 2008. Sherwood did not post the bond, the trial court lifted the TRO, and the Finns relocated Matthews to California.
¶ 12 On June 27, 2008, the trial court held a hearing on the guardianship petition and various motions regarding attorney fees. Citing Matthews's lack of presence in Washington and a pending California guardianship proceeding, the trial court dismissed the guardianship petition and discharged the GAL. The trial court then ordered Matthews's estate to pay Abrahams's GAL fees ($1,687.26), fees for transporting Matthews for magnetic resonance imaging ($503.62), and Mark Mullins's (Abrahams's first counsel) attorney fees ($1,005.00). The trial court ordered Sherwood to pay Gerald Grimes's (Abrahams's second counsel) attorney fees ($8,420.00) and part of the Finns' attorney fees ($10,000.00). The trial court entered its order and the $10,000.00 judgment in favor of the Finns on July 11, 2008. Sherwood challenges only the $10,000.00 attorney fees judgment awarded to the Finns and the Finns cross-appeal, claiming that the judgment amount is insufficient to cover their actual costs and fees.

ANALYSIS

Sherwood's Substitution as the Guardianship Petitioner
¶ 13 Sherwood first argues that the trial court erred in substituting it as the guardianship petitioner. Although Sherwood appealed only the trial court's July 11, 2008 judgment and not its April 24, 2008 order substituting it as the guardianship petitioner, the substitution ruling prejudicially affected the challenged judgment and, thus, requires our review. RAP 2.4(b)(1).
¶ 14 Sherwood has not provided a record of the substitution hearing, but the Finns included portions of the record relating to the substitution of Sherwood as the guardianship petitioner for its employee, Keith. Although the record is sparse as to the reasons for the trial court's decision to substitute Sherwood as the guardianship petitioner, it reveals that Keith stated shortly after filing the guardianship petition, and in her motion for substitution, that her actions were taken on Sherwood's behalf. Sherwood's attorneys *1144 assisted Keith in filing the original guardianship petition and it is clear that Keith filed the petition in her capacity as a Sherwood employee. Substantial evidence supports the trial court's decision to substitute Sherwood as the petitioner in Matthews's guardianship proceeding.

Application of Agency Law
¶ 15 Before determining a guardianship petitioner's liability for attorney fees, we must first address the legal relationships among a guardianship petitioner, a GAL, the trial court, and an incapacitated person in a guardianship proceeding. Here, without citing to statutory authority or agency rules, the trial court imposed duties and responsibilities on the guardianship petitioner, Sherwood.
¶ 16 The relationships among, and duties and liabilities of, a guardianship petitioner, GAL, a trial court, and an incapacitated person are legal questions that we review de novo. See Bishop v. Miche, 137 Wash.2d 518, 523, 973 P.2d 465 (1999). Our review of Washington statutes and common law reveals a significant void in explaining these relationships, duties, and liabilities, particularly in the context of Title 11 RCW guardianship proceedings.
¶ 17 A guardianship petitioner's duties and responsibilities in these proceedings are extremely limited. Under former RCW 11.88.030(1) (1996), a guardianship petitioner must provide certain statutorily required information in a petition and file the petition in "good faith and upon reasonable basis." The guardianship petitioner's role is essentially to alert the trial court of the potential need and reasons for a guardianship of an incapacitated person and to respond to any inquiries from the trial court. See former RCW 11.88.030(1). Once a trial court accepts a guardianship petition for review, the petitioner's role in the process essentially ends.
¶ 18 The real party at interest in a guardianship proceeding is the alleged incapacitated person and it is the trial court's duty to ensure that his interests are protected; the trial court frequently appoints a GAL to assist it in performing this duty. See In re Guardianship of Gaddis, 12 Wash.2d 114, 123, 120 P.2d 849 (1942); In re Guardianship of McKean, 136 Wash.App. 906, 913, 151 P.3d 223 (2007). Under both former RCW 11.88.010 (2005) and RCW 11.96A.160, a trial court has the power to appoint a GAL to represent the interests of an incapacitated party.[5] Former RCW 11.88.010(3); RCW 11.96A.160(1). A GAL's duty is to "represent the interests of a minor, incapacitated, unborn, or unascertained person." RCW 11.96A.160(1). And under former RCW 11.88.090, a GAL's primary responsibilities include (1) investigating, gathering, and evaluating information on the appointed person and his/her circumstances; and (2) submitting a report of findings and recommendations to the court. See former RCW 11.88.090(5). A GAL appointment exists at the will of the court. See former RCW 11.88.090(11) (stating after a GAL submits a report and the court enters an order, the GAL has "no further duties or obligations unless otherwise ordered by the court") (emphasis added). Thus, a GAL is an agent of the court with duties and obligations flowing from the GAL to the court with a duty to protect the interests of an incapacitated person. We hold that a GAL appointed under RCW 11.96A.160 or former RCW 11.88.010 has an agency relationship with the court much like a permanent guardian or limited guardian appointed under the Trust and Estate Dispute Resolution Act (TEDRA) (ch. 11.96A RCW) has with the court. Seattle-First Nat'l Bank v. Brommers, 89 Wash.2d 190, 200, 570 P.2d 1035 (1977) (the court is the "superior guardian" of a ward while the appointed guardian is "an officer of the court"); In re Gaddis, 12 Wash.2d at 123, 120 P.2d 849 (a guardian "is directly responsible only to the court of his appointment. The guardian is in effect an agent of the court, and through him the court seeks to protect the ward's interest.") (citation omitted).
*1145 ¶ 19 A GAL is not an agent of a guardianship petitioner. A GAL makes recommendations and takes actions free of a petitioning parties' vested interests. See former RCW 11.88.090(3)(a). Thus, the petitioner for a guardianship cannot be held liable for the GAL's actions taken during the guardianship petitioning process and vice versa. Specifically relevant to this case, a GAL has the power to "move for temporary relief under chapter 7.40 RCW to protect the alleged incapacitated person from abuse, neglect, abandonment, or exploitation." Former RCW 11.88.090(9). Chapter 7.40 RCW covers injunctions and restraining orders: "No injunction or restraining order shall be granted until the party asking it shall enter into a bond." RCW 7.40.080 (emphasis added).
¶ 20 Here, the trial court acted on Sherwood's guardianship petition and appointed Abrahams as Matthews's GAL. In her court-appointed GAL capacity, Abrahams moved for and obtained a TRO preventing the Finns from removing Matthews from Sherwood. As the trial court's agent charged with protecting Matthews's interest, Abrahams had sufficient reasons to seek the TRO. Specifically, the Ombudsman's investigation that revealed information that suggested the Finns' breached their fiduciary duties to Matthews's estate. That Abrahams obtained assistance from Sherwood's attorneys in drafting the TRO motion does not prove that Sherwood exercised undue influence on Abrahams's independent decision to seek the TRO and the trial court made no such finding. Nor did Sherwood's assistance establish any agency or contractual relationship between it and Abrahams, whose duties were to the court and Matthews only. Here, simply put, the trial court accepted its agent's recommendation when imposing the TRO.
¶ 21 But after granting the TRO, the trial court imposed the bond requirement on Sherwood. RCW 7.40.080 explicitly requires that the person seeking a TRO, here the GAL, enter the bond or that the court waive the bond requirement. Unless they are appointed as the guardian or seek a TRO, there is no statutory authority for a trial court to impose a bond requirement on a guardianship petitioner. And because there is no legitimate agency relationship between Sherwood and the GAL, and because the GAL and not Sherwood sought the TRO, the trial court improperly shifted the bond burden from the GAL to Sherwood. The trial court erred by imposing the bond requirement on Sherwood.

Attorney Fees
¶ 22 Next, we turn to whether the trial court properly exercised its authority to order the guardianship petitioner, here Sherwood, to pay the Finns' attorney fees in this case. Under an abuse of discretion standard, as established in RCW 11.96A.150(1), we hold that the trial court abused its discretion in awarding the challenged attorney fees to the Finns. Here, the trial court abused its discretion by imposing attorney fees on Sherwood for its failure to post the bond that, as addressed above, it had no duty to pay.
¶ 23 Washington courts do not award attorney fees unless expressly authorized by contract, statute, or recognized equitable exception. Pierce County v. State, 159 Wash.2d 16, 50, 148 P.3d 1002 (2006). RCW 11.96A.150 grants a superior court the ability to impose attorney fees. But the scope and applicability of RCW 11.96A.150 within Title 11 RCW is a matter of first impression for this court. We review questions of law, including statutory construction, de novo. City of Pasco v. Pub. Employment Relations Comm'n, 119 Wash.2d 504, 507, 833 P.2d 381 (1992). "[I]f the statute's meaning is plain on its face, [we] must give effect to that plain meaning as an expression of legislative intent." Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9-10, 43 P.3d 4.
¶ 24 RCW 11.96A.150 provides:
(1) Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the *1146 court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.
(2) This section applies to all proceedings governed by this title, including but not limited to proceedings involving trusts, decedent's estates and properties, and guardianship matters. This section shall not be construed as being limited by any other specific statutory provision providing for the payment of costs, including RCW 11.68.070 and 11.24.050, unless such statute specifically provides otherwise. This section shall apply to matters involving guardians and guardians ad litem and shall not be limited or controlled by the provisions of RCW 11.88.090(10).[6]
(Emphasis added.) Under the plain language of RCW 11.96A.150(2), a superior court can award attorney fees to any party as part of any Title 11 RCW action and it is not limited to awarding attorney fees just in TEDRA actions.[7]
¶ 25 Because the statute explicitly grants the superior court discretion to award attorney fees, we review such fee awards for an abuse of discretion. See In re Guardianship of Spiecker, 69 Wash.2d 32, 34-35, 416 P.2d 465 (1966) (citing In re Estate of Leslie, 137 Wash. 20, 241 P. 301 (1925)). A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or when untenable reasons support the decision. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
¶ 26 Here, the trial court awarded attorney fees after it imposed an obligation on a guardianship petitioner that is not recognized in Washington law. The trial court found that Sherwood's "refusal to post a bond amounted to a failure to follow through on the petitioner's obligation in this matter." CP at 10. And the trial court stated, "the Petitioner had some obligation to follow through particularly where it was Petitioner's counsel who assisted in obtaining the restraint that kept [Matthews] in Sherwood in the first place." Report of Proceedings at 23. But there is no such obligation recognized under Washington law requiring a guardianship petitioner to follow through with subsequent court proceedings resulting from a GAL's recommendations or actions. Thus, the trial court's award of attorney fees based on Sherwood's failure to post the bond is an extension of its underlying error in shifting the bond burden from the GAL to Sherwood. Accordingly, the trial court erred when it ordered Sherwood to pay the Finns' attorney fees and costs.[8] We deny the Finns' cross-appeal for additional trial court attorney fees and costs.[9]
¶ 27 The award of attorney fees against Sherwood is reversed.
We concur: HUNT, J., and PENOYAR, A.C.J.
NOTES
[1] The record does not include the court order appointing Abrahams (sometimes spelled "Abrams") as Matthews's GAL but does include a copy of a filed acceptance of service where Abrahams accepted service, as Matthews's GAL, of an "Order Appointing GAL." Clerk's Papers (CP) at 227.
[2] The Finns assert that they paid the account in full on December 18, 2007. The Finns previously stated that they paid the bill in full on December 14, 2007. Sherwood's billing does not reflect a specific date in December 2007, indicating when the Finns paid Matthews's bill in full.
[3] The record contains no petition or court order for the Finns intervening in this case, but Sherwood admits in its briefing that the Finns properly intervened.
[4] The trial court did not specify if "the Petitioner" referred to Keith, Sherwood, or both. CP at 126. The Finns' motion requested "Rena Keith and Sherwood Assisted Living" enter the bond. CP at 411. Sherwood did not become an official party in this action until April 24, 2008, when the trial court reduced to writing its April 11, 2008 oral ruling where it substituted Sherwood for Keith as the guardianship petitioner.
[5] We review GALs appointed under both former RCW 11.88.010 and RCW 11.96A.160 because the record does not reveal which statutory authority in Title 11 RCW the trial court used to appoint the GAL here.
[6] Former RCW 11.88.090(10) relates to the payment of GAL fees and does not reference attorney fees.
[7] Accordingly, even if Matthews's GAL was appointed under former RCW 11.88.010, the trial court had discretionary authority to award attorney fees. We note that former RCW 11.88.090(3) grants a trial court the authority to award attorney fees against a moving party seeking to replace a GAL if the GAL is not ultimately replaced, a course of action no party in this case ever pursued, and for frivolous motions, which none of Sherwood's motions appear to be. Otherwise, no other section of chapter 11.88 RCW explicitly grants a trial court the authority to award attorney fees in guardianship matters brought in good faith under the provisions of chapter 11.88 RCW.
[8] Because we hold that the GAL is the court's agentnot the guardianship petitioner's agentand, thus, that the trial court's attorney fees award against Sherwood is groundless, we leave for another day the question that the parties briefed as to whether former RCW 11.88.030 limits a trial court's authority, pursuant to RCW 11.96A.150, to impose attorney fees on a person who in good faith petitions a court to appoint a guardian for an incapacitated person.
[9] Sherwood did not request attorney fees on appeal. The Finns properly requested attorney fees under RCW 11.96A.150. RAP 18.1. However, as the Finns are not the prevailing party on appeal, we award no appellate attorney fees.