FILED
COURT OF APPEALS
DIVISION II

2013 JUL 30 AM 10: 28

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Matter of the Guardianship of:<br><br>RICHARD B. MORSE,<br><br>   A Partially Incapacitated Person. | No. 42076-7-II<br><br><br>UNPUBLISHED OPINION |

PENOYAR, J. — Richard Morse appeals the order appointing a limited guardian of his person and a full guardian of his estate, arguing that the trial court erred by appointing counsel for the guardian ad litem and by allowing counsel to participate during his guardianship trial. Because Morse did not object at the time of the appointment and because the trial court has broad authority to regulate the conduct of a trial, we affirm and award the respondent attorney fees on appeal.

## FACTS

Born in 1938, Morse graduated from college and served in the military before returning to Clark County in 1970 to live with his mother. Morse's sister and her husband, Louise and Dr. Richard Guthrie, bought the family home, and Morse continued to live there after his mother died. The Guthries stopped sending Morse monthly financial support when he became eligible for Social Security, but they continued to pay his phone and utility bills. Morse owned a neighboring 40-acre parcel of land.

Over the years, his neighbors observed him preaching outside in his yard and, on occasion, wearing clothing that was inappropriate for the weather. They also observed considerable garbage and debris around his home. The Guthries became concerned about

Morse's living conditions and helped him clean up his property after he received a notice from the county in 2003. In early 2010, they also became concerned about Morse's health. Morse had trouble with his mobility and breathing, and Dr. Guthrie observed large sores on his legs and an odor of decaying flesh around him.

Morse initially resisted medical treatment, but he was eventually hospitalized with deep wounds on his legs, untreated diabetes, and other medical conditions. During his hospitalization, the Guthries cleaned up his home. They discovered that he had been living with approximately 30 cats and layers of debris that included cat feces and dead cats. The kitchen stove was unusable; Morse had been cooking on an upturned space heater.

After a month in the hospital, Morse was discharged to Vancouver Health and Rehabilitation Center (VHR), a skilled nursing facility, for rehabilitation. He began hoarding urine and rotting food and would not discuss his future plans beyond explaining that "God will provide." 4 Report of Proceedings (RP) at 351-52. When it became apparent that VHR staff could not determine whether Morse understood his ongoing medical needs, the social services director filed a guardianship petition. Pursuant to her request, the trial court appointed Thomas Deutsch as guardian ad litem (GAL).

In a conversation with the GAL, Morse expressed his unhappiness with the guardianship petition, questioned the GAL about his spiritual beliefs, and gave the GAL a piece of scripture. The GAL also spoke with Morse's sister and caregivers and reviewed his medical records. Morse had implanted wound pumps that required medical management, and the GAL became concerned that Morse faced discharge from VHR because of his inability to pay for his care. Morse was ineligible for Medicaid because of the property he owned, and the GAL eventually moved for the appointment of counsel to assist him in getting a court order to list the property for

sale and enable Morse to qualify for Medicaid. The GAL's attorney, Therese Greenen, subsequently obtained an order expanding the GAL's duties to allow for the listing of the property. Greenen also obtained a court order requiring Morse to participate in a neuropsychological evaluation by Dr. Stephen Meharg.

The GAL eventually filed a report recommending a limited guardianship of the person and a full guardianship of the estate for Morse. The matter proceeded to a jury trial, and during a pretrial conference in chambers, the parties resolved a motion to limit Greenen's participation at trial to matters involving the GAL. Back in court, the parties agreed that Greenen would be allowed to cross examine witnesses on behalf of the GAL and that she could directly question Dr. Meharg and the GAL. Morse's attorney then objected to the GAL having counsel and asserted that the presence of such counsel "unfairly paints the Guardian ad Litem's opinion as greater than another witness." 1 RP at 23.

Counsel for petitioner VHR responded that Greenen had been serving as the GAL's counsel for several months, and Greenen explained that the GAL had needed her to file several motions with the court. The trial court ruled that it was customary to occasionally appoint counsel for a GAL and that Greenen's participation at trial would aid the court.

Morse's neighbors, family, and two VHR staff members then testified to the facts set out above. Greenen asked Dr. Guthrie a single question about Morse's assumption of financial responsibility. Greenen then conducted the GAL's direct examination and asked two questions of John Majerus, Moore's physical therapist, on cross examination. The trial court gave Greenen the opportunity to object to some exhibits introduced during Majerus's testimony, but she declined.

3

Before testimony resumed the following day, Morse objected to Greenen's cross examination of Majerus as beyond the scope of the parties' agreement. Greenen agreed to abide by that agreement and then conducted Dr. Meharg's direct examination. Dr. Meharg testified that Morse has a psychotic-type illness that affects his insight, and he added that Morse's hoarding behavior would prove especially "persistent and stubborn." 3 RP at 292. Morse testified on his own behalf.

The jury returned verdicts finding that Morse was partially incapacitated as to his person and fully incapacitated as to his estate. The court then issued an order appointing a limited guardian of the person and a full guardian of the estate.

## ANALYSIS

### I.    COUNSEL FOR GAL

Morse contends on appeal that the trial court erred by appointing counsel for the GAL and by allowing counsel to participate in his guardianship trial.

We observe initially that Morse cites no authority to support his claim that the trial court erred by appointing counsel for the guardian ad litem. In the single case he does cite, the GAL was represented by two attorneys. *In re Guardianship of Matthews*, 156 Wn. App. 201, 208, 232 P.3d 1140 (2010). Furthermore, Morse did not object to the appointment of counsel for the GAL until after the parties had agreed to the scope of counsel's participation at trial and well after counsel had obtained court orders on the GAL's behalf. Finally, we note that the trial court has the inherent authority and broad discretion to control litigation and to regulate the conduct of a trial. *See State v. Gregory*, 158 Wn.2d 759, 816, 147 P.3d 1201 (2006); *In re Marriage of MacGibbon*, 139 Wn. App. 496, 508, 161 P.3d 441 (2007). Having appointed counsel for the

GAL without objection, the trial court had the authority to allow counsel to continue to represent the GAL at trial. We find Moore's objection to counsel for the GAL untimely and without merit.

Morse also argues on appeal that the trial court erred by allowing counsel for the GAL to examine several witnesses at trial. As stated, the parties agreed to allow counsel for the GAL to question certain witnesses. Morse objected during trial that counsel had exceeded that agreement, but that is not his argument now. Rather, he contends that it was error for the court to allow that agreement at all. Having failed to make that argument below, he may not make it on appeal, as he makes no showing that it implicates a manifest error affecting a constitutional right. RAP 2.5(a)(3).

II.  ATTORNEY FEES

VHR, the respondent herein, requests an award of attorney fees on appeal under RCW 11.96A.150, which provides as follows:

> (1)  Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party:  (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings.  The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable.  In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.
> (2)  This section applies to all proceedings governed by this title, including . . . guardianship matters.

As the statute makes clear, there is no firm rule governing an award of fees, and in some situations, fees are properly assessed against an estate. *In re Estate of Black*, 116 Wn. App. 476, 490, 66 P.3d 670 (2003), *affirmed on other grounds*, 153 Wn.2d 152, 102 P.3d 796 (2004). The

42076-7-II

trial court awarded VHR attorney fees below. We award VHR attorney fees on appeal subject to its compliance with RAP 18.1(d).

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Penoyar, J.

We concur:

Hunt, J.

Bjorgen, J.