[No. 37951.   Department One.   February 17, 1966.]

*In the Matter of the Trust Estate of* MARY A. POWELL, *Deceased.*

CHARLES O. POWELL, *as Trustee, Respondent,* WESLEY GARDENS, *Appellant.**

*Reported in 411 P.2d 162.

*Clinton, Moats, Andersen & Fleck* (*Newton Paul Moats, of counsel*), for appellant.

*L. Edward Brown*, for respondent.

HILL, J.—This is an appeal from an order approving the 1963 account of the trustee under a testamentary trust and the allowance of fees to the trustee and his attorney in the amounts of $8,000 and $3,250 respectively.

Mary A. Powell, deceased, by her will left the residue of her estate to Charles O. Powell as trustee. Under the terms of the trust, a daughter and two brothers were each to receive $250 a month "throughout the lifetime of each"; and "After all of said payments have been made in the manner herein specified," the trust property then remaining in the hands of the trustee was to be distributed one-fourth to each of the following: First Methodist Episcopal Church of Vancouver, Washington; Vancouver Chapter of American Red Cross; Wesley Gardens; and Vancouver Chapter of the Young Women's Christian Association.

The appraised value of the residue of the Mary A. Powell Estate, which came into possession of Charles O. Powell as trustee on the 27th day of February, 1950, was $224,173.73.

Wesley Gardens, one of the four ultimate beneficiaries, filed exceptions to the 1963 report, protesting the fees of the trustee ($8,000) and his attorney ($3,250) and asking for the removal of the trustee and the appointment of a corporate trustee—the latter on the ground that a corporate trustee would receive a lower fee[1] and would do the work better.

All of the beneficiaries to whom monthly payments were to be made are still living. These payments aggregate $9,000 each year. The value of the trust property, as shown by the 1963 report, had increased to $724,242.85.

---

[1] The superior court stated in its memorandum opinion: "Mr. Carlson testified that Seattle-First National Bank's fee would be ½ of 1% per year on the value of the trust estate."

We do not find that testimony; and the figures given by Mr. Carlson (exhibit No. 4) as to the fees the bank would have charged in each year, came out somewhat under that percentage.

The income for 1963 was $25,441.45. The expenditures (the trustee's fee of $8,000 and the attorney's fee of $3,250; the $9,000 distributed in monthly payments to the three beneficiaries named; an income tax on 1962 income of $1,582.05; miscellaneous $257.45), totalled $22,089.50. The net figure was $3,351.95.

■ This suggestion, that the trustee be changed, seems to us sheer effrontery. Mary A. Powell had as much right to choose her trustee as she did her beneficiaries. If she had wanted a corporate trustee, she could have named one; instead, she named her nephew, Charles O. Powell an elementary school principal, in whom she obviously placed confidence. There is not the slightest suggestion of any lack of fidelity to this trust or incompetence in the performance of it. The lone objector says, in effect, that a corporate trustee would do it "cheaper and better." If that be true, the fact remains that Mary A. Powell had the unquestioned right to select an individual to be the trustee, even if an individual administration of the estate would be more expensive and less efficient than an administration by a corporate trustee. The request for a change of the trustee was properly denied.

Mary A. Powell was specific as to how her trustee was to be compensated. He was, by the terms of her will, to

[R]eceive a just and reasonable compensation for his services . . . the same to be fixed and allowed by the Court in which this will is probated.[2]

The testatrix, and not one of the beneficiaries, determines the trustee; the superior court, and not one of the beneficiaries, determines his compensation.

It is clear from the memorandum opinion and from the findings that the fee fixed represented the considered judgment of the superior court as to what was a just and

---

[2]The will was probated in Clark County; for reasons not apparent from the record, this provision of the will and the trust created by it have been ignored, and the annual report is made to and the fees are fixed by the Superior Court for Grays Harbor County (in which county the trustee resides). No objection to this change has been voiced by any of the beneficiaries, and we, therefore, do no more than call attention to it.

reasonable compensation to the trustee for his services in 1963. At the same time, it was indicated that there had been considerable soul searching in arriving at that result and that a review by the Supreme Court would be welcomed.

Even though giving the trustee full credit for a dedicated endeavor and an excellent performance, no member of the court hearing this appeal would have allowed a fee of $8,000. It seems to us that a fee more than double what the trust department of a bank[3] would have charged and amounting to practically a third of the annual income of the trust, could be approved only under very exceptional circumstances which do not exist here.

■ We agree with the respondent trustee that the charges made by trust companies and trust departments of banks for similar services are not controlling in the present case, but they certainly are to be included in the factors going into a determination of what constitutes a just and reasonable fee.

The trustee's briefs cite no cases upholding an $8,000 award to a trustee in such an estate, and the fees allowed in the cases which we have examined indicated that an allowance of $8,000 would be so far out of line that it should be held to be unjust and unreasonable.

■ · The Arizona Supreme Court in *In re Estate of Dunlap*, 38 Ariz. 525, 2 P.2d 1045 (1931), states that the elements to be considered in fixing a proper fee are: (1) The amount of risk and responsibility involved, (2) the time actually required of the trustee in the performance of the trust, (3) the size of the estate, (4) the amount of income received, and (5) the manual and over-all services performed.

The elements which should be considered in arriving at a just and reasonable fee, as announced in the Arizona decision, are universally the standards. See Restatement

---

[3]$3,030.00; this seems to have been computed not on the basis of one-half of one percent of the corpus of the trust, but on the basis of one-half of one per cent of the first $250,000 and three-eighths of one per cent on the remainder.

(Second), Trusts § 242; Bogert, Trusts & Trustees §§ 975, 977 (2d ed.); 3 Scott, Trusts § 242 (2d ed.).

The material facts in the *Dunlap* case were that, for the fiscal year involved, the trust had earned $46,941.94 (Powell trust $25,441.45). At the beginning of the fiscal year, the *Dunlap* trust was valued at $1,090,062.96 (Powell trust $676,945.63), and, at the end of the fiscal year, the *Dunlap* trust had increased in value $132,596.58 (Powell trust $47,297.22). The award to the trustee in the *Dunlap* case, including attorney's fee, was $5,473.20 (Powell trust $11,250). The trustee's duties in the cited case were nearly identical to those here in question.

The duties of the trustee in this case fall into two catagories: (a) Manual services, and (b) investment responsibility.

As to (a), the will required the trustee to disburse $250 a month to the settlor's daughter, and a like sum to each of the settlor's two brothers. This entailed keeping a check register and the annual writing of 36 checks and letters of transmittal. The record shows that the various stocks paid quarterly dividends, bond interest was paid semiannually, and it was necessary to maintain a record of these receipts and to deposit the funds thus received in the bank. Once each year, the trustee furnished his attorney with an itemized statement of receipts and disbursements of the trust, from which the attorney prepared the income tax return and the annual report to the court. For the performance of these bookkeeping and secretarial duties, the trustee's fee should be predicated upon the usual hourly rate of pay established in the community for such services.

As to (b), the investment duties required the exercise of special skill and judgment. The trustee purchased, at the expense of the trust, 3 investment services which he studied for general information, but he relied exclusively upon the skill and judgment of the agents of two reputable investment companies in the purchase and sale of securities for the trust. The trustee received from the settlor an excellent portfolio of 21 securities, nearly all of which he retained for many years. His duties at the inception of the trust did not

entail the selection of a portfolio, but, rather, the exercise of his discretion relative to new securities to be purchased with the income received from the trust securities. It is, of course, recognized that it requires as high a degree of discretion to determine which securities to keep, as to determine which securities to buy or sell.

Applying the stated standards to be considered and the duties performed, what is a just and reasonable annual compensation for the trustee for the year 1963 in the trust with which we are here concerned?

Five jurisdictions, by statute, predicate the fee of a trustee upon a percentage of the corpus of the trust for the fiscal period under consideration, and also a percentage of the gross income of the estate. In these jurisdictions, the fee allowed for the fiscal year 1963 in the *Powell* trust would have been: Delaware $3,687, Hawaii $1,350, Kentucky $2,698, Maryland $1,087, and New York $1,923.

A majority of the states have adopted a policy of no differentiation between corporate and individual trustee fees. This state has not adopted such a policy; however, the corporate fees which would be allowed should furnish a basis of comparison. We are satisfied that an increase of between 50 and 60 per cent over the amount a corporate trustee would receive is the most that we can justify as "just and reasonable" compensation for an individual trustee. The fee of $8,000 should be reduced to $4,848 (this is $1,818 in excess of the $3,030 which the bank would have received and amounts to an allowance of an additional 60 per cent).

The attorney's fee of $3,250 seems to be more than three times any amount which can be justified for the legal services rendered in 1963, in preparing the 1962 income tax return and in preparing the annual interim report of the trustee. We are satisfied that $1,000 was an adequate fee for those services. The other work described by the attorney could have been performed by any bookkeeper, and compensation should not be charged against the trust on the basis of legal fees. An allowance of $500 for such

services is all that can be justified. The $3,250 allowance for attorney's fees should be reduced to $1,500.

The cause is remanded with instructions to allow a fee of $4,848 to the trustee and $1,500 to the attorney. The superior court's refusal to remove the trustee is affirmed.

ROSELLINI, C. J., OTT, HAMILTON, and HALE, JJ., concur.

April 19, 1966. Petition for rehearing denied.

*Reported in 411 P.2d 407.