# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Guardianship of: | No. 47283-0-II |
| CHRISTOPHER JUNK, | |
| An Incapacitated Person. | UNPUBLISHED OPINION |

SUTTON, J. — RBC Trust Company (Delaware) Limited appeals the superior court's order disapproving RBC's trustee's fees for 2013-2014 and prospectively modifying the fee schedule in the trust agreement. We reverse the superior court's order on fees, vacate the modification of the trust agreement's fee schedule, and remand to the superior court to enter an order approving the fees for 2013-2014 consistent with the trust agreement's fee schedule and for further proceedings consistent with this opinion.

## FACTS

Christopher Junk fell from a tree in October 1998, when he was eight years old, and suffered debilitating injuries. After a settlement following the accident, the Christopher Nicholas Junk Special Needs Trust Two (Trust) was established and funded with proceeds from the settlement.

The Trust provided that the trustee shall receive compensation "in accordance with the [t]rustee's schedule of fees, applying to trust accounts of this kind at the time such services are rendered," and that the "court shall review and approve all fees paid to any professional [t]rustee"

at each accounting review. Clerk's Papers (CP) at 21. The Trust also authorized the trustee to hire other agencies or persons "reasonably necessary for the management and protection of the [T]rust" and to compensate for such services "as the [t]rustee shall determine to be proper." CP at 20.

RBC did not directly manage the investment of the trust assets but oversaw the trust investments and delegated the investment duties to UBS Financial Services Inc.,[1] an outside money manager. In October 2009, the superior court approved the trustee's report[2] and approved the following fee schedule for RBC and UBS:

> C. Trustee's Fees of Substitute Co-Trustee and Financial Trustee
>
> As [t]rustee, RBC intends to charge an annual fee of 0.65% on the first $500,000.00, 0.55% on the next $500,000.00, 0.40% on the next $4,000,000.00 and 0.30% on the balance over $5,000,000.00. Additional fees may be charged for services which are not covered by the annual fee. . . . Similar to their arrangement with ATCO, UBS has also agreed to reduce their fee for investment management on [t]rust assets held in managed accounts to ensure the fees charged on this Trust are reasonable and in accordance with the fees typically charged for the administration of a special needs trust in the state of Washington. UBS will continue to charge a discounted annual fee on the managed accounts of 2.25% on the first $500,000.00, 1.9% on the next $500,000.00, 1.6% on the next $4,000,000.00 and 1.4% on the balance over $5,000,000.00. This amount is the same as its current annual fees on the JUNK Trust.

CP at 84-85.

---

[1] UBS Financial Services Inc. offers wealth management services. The company's services include banking services, stocks, bonds, mutual funds, insurance, estate planning, philanthropic advice, and access to alternative investments such as hedge funds.

[2] SPR 98.16W(j)(3)(D) provides that "[t]he fiduciary shall prepare an annual statement of income, expenses, current assets, and fees charged; shall deliver the statement to any co-trustees, the beneficiary, and the beneficiary's personal representative; and shall present the statement for review and approval by the court having jurisdiction over the beneficiary." Additionally, "the court . . . shall determine the correctness of the account and the validity and propriety of all actions of the trustee . . . and shall render its decree either approving or disapproving the account or any part of it." RCW 11.106.070.

From October 2009 until January 2013, the superior court approved the trustee's annual reports, which reflected the trust balances, the trustee's fees, and the investment management fees.

In January 2013, RBC filed its trustee report seeking approval for the period of October 2011-September 2012. In December 2013, the superior court approved RBC's trustee fees for October 2011-September 2012 and ordered that RBC was authorized to continue receiving fees under the fee schedule "unless and until otherwise directed by the [c]ourt." CP at 874. In a separate order, the court approved RBC's trustee report for October 2012-June 2013.

In October 2014, RBC filed its trustee report for July 1, 2013 through June 30, 2014 and petitioned for approval of $15,571.45 in trustee's fees and $56,038.08 in investment management fees consistent with the trust fee schedule. In November, the superior court continued the hearing to approve the trustee's report, and sua sponte appointed a guardian ad litem (GAL)[3] to review the trustee's report, including specific review of the attorney fees and costs and the trustee's fees and costs. RBC did not object to the GAL's appointment.

The GAL submitted his report to the superior court in January 2015 and recommended that "it is in [Junk's] best interests to significantly reduce the fees being charged for the management of his Special Needs Trust." CP at 1112. The GAL's report stated that "[o]ver 30 years, the current fees being charged by RBC and UBS, under the [current fee structure], will **reduce** the gain to the

---

[3] The court appointed the GAL under RCW 11.88.090(1) and RCW 11.96A.160(1). RCW 11.88.090(1) provides that the court shall have the power to appoint a GAL to defend the interests of any incapacitated person interested in any suit or matter pending therein. RCW 11.96A.160(1) provides that "[t]he court, upon its own motion or upon request of one or more of the parties, at any stage of a judicial proceeding or at any time in a nonjudicial resolution procedure, may appoint a guardian ad litem to represent the interests of a minor, incapacitated, unborn, or unascertained person, person whose identity or address is unknown, or a designated class of persons who are not ascertained or are not in being."

Trust by 49.22%" and that the lower fees offered at other institutions could make a difference of millions of dollars in the balance of the Trust over the course of Christopher's life. CP at 1109. However, the GAL's report also stated that is was "very difficult to perform a one-to-one comparison of trustee and investment management fees between various trust companies because the method of charging fees varies significantly between institutions." CP at 1110. The GAL also reported that the Trust appears to be a "fairly smooth functioning trust" and concluded that the trust's expenditures for Christopher, including the fees paid to his father as his guardian and caregiver were appropriate. CP at 1111.

The GAL also expressed concern that RBC "estimated that it devoted approximately 252 hours, on an annual basis, to its role as [t]rustee." CP at 1111-12. RBC filed a written response to the GAL's report claiming that the GAL lacked expertise in trust administration, that the GAL's investigation was not complete or thorough, and that the GAL's analysis of the fees was flawed because the GAL compared RBC's trustee fees to the fees charged by corporate bank trustees.

In February, the superior court held a hearing to consider RBC's request to approve the trustee fees for 2013-2014. At the hearing, the GAL stated that the "fees [were] way beyond reasonable" and recommended that the fees be reduced. Verbatim Report of Proceedings (VRP) at 7. RBC's counsel argued to the court that the GAL's comparison of bank trustee's fees to RBC's fees was inaccurate because the structure used by the bank trustees was complex, and bank trustee fees may include undisclosed hidden fees, unlike RBC's fees.

The superior court commented that the Trust was "running out of assets" and expressed concerns about what may happen to Christopher once his father passed away. VRP at 2. Although the superior court entered an order approving the trustee's report for the 2013-2014 period, the superior court deviated from the fee schedule for RBC's trustee's fees for 2013-2014 and the superior court approved RBC's fees for a much lower amount than requested. The superior court also modified the fee schedule in the trust agreement by reducing the future trustee fees that may be charged by RBC and ruled that "[t]he total trustee and investment management fees moving forward shall not exceed 1.3% of the [t]rust assets, billed on a quarterly basis." CP 1212.

RBC appeals the superior court's order disapproving the trustee's fees for 2013-2014 and modifying prospective fees.

## ANALYSIS

RBC argues that the superior court abused its discretion by deviating from the fee schedule in the trust document, by approving RBC's fees for 2013-2014 for a lower amount than requested, and by ruling that prospective future fees that may be charged will not exceed 1.3% of the trust assets. We agree and accordingly, we reverse the trial court's order.

### I. 2013-2014 TRUSTEE'S FEE

RBC argues that the trustee fees were consistent with the fee schedule in the trust agreement, that the GAL report did not consider the complexity of and the differences in the fee schedules charged by corporate bank trustees, and that the fees were reasonable under *Powell*.[4]

---

[4] *In Re Trust Estate of Powell*, 68 Wn.2d 38, 411 P.2d 162 (1966).

Thus, RBC argues that the trial court abused its discretion by disapproving the fees for 2013-2014 and in modifying prospective fees that may be charged. We agree that the trial court erred.

Because RCW 11.106.070 grants a superior court the authority to review and approve trustee fees, we review a superior court's decision on whether the trustee fees are reasonable for an abuse of discretion. *See In Re Guardianship of Matthews*, 156 Wn. App. 201, 214, 232 P.3d 1140 (2010). A superior court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or when untenable reasons support the decision. *Matthews*, 156 Wn. App. at 214.

We give effect to the trustor's intent; if the language of the instrument is unambiguous, we ascertain the trustor's intent form the language of the instrument itself without extrinsic evidence. *In Re Guardianship of Jensen*, 187 Wn. App. 325, 331, 350 P.3d 654 (2015). When a trust gives the trustee discretion to carry out the trust's objectives, a court may not control the exercise thereof absent an abuse of the trustee's discretion. *Templeton v. Peoples Nat'l Bank of Wash.*, 106 Wn.2d 304, 309, 722 P.2d 63 (1986).

The Trust stated that the trustee would receive compensation for services "in accordance with the [t]rustee's schedule of fees, applying to trust accounts of this kind at the time such services are rendered." CP at 21. In October 2009, the superior court approved an explicit fee schedule for RBC and UBS.

Here, there is no evidence that the trustee abused its authority; the fees charged by RBC for 2013-2014 were consistent with the court approved fee schedule in the trust agreement. The superior court abused its discretion by disapproving RBC's fees for 2013-2014.

## II. PROSPECTIVE MODIFICATION OF FEE SCHEDULE

RBC also argues that the trial court erred by prospectively modifying the fee schedule in the trust agreement. We agree and remand for application of the *Powell* factors.

During the annual review hearing, the superior court can reevaluate the reasonableness of a trustee's fee schedule. RCW 11.96A.020 (trial courts have plenary authority to decide trust matters). In determining whether a trustee's fees are reasonable, a superior court should review the fees under the five *Powell* factors: "(1) [t]he amount of risk and responsibility involved, (2) the time actually required of the trustee in the performance of the trust, (3) the size of the estate, (4) the amount of income received, and (5) the manual and over-all services performed." *In Re Trust Estate of Powell*, 68 Wn.2d 38, 41, 411 P.2d 162 (1966).

Here, the trial court failed to apply all five *Powell* factors to determine the reasonableness of the fee schedule in the fee agreement, thus it abused its discretion by prospectively modifying the fee schedule. Accordingly, we reverse the trial court's order modifying the fee schedule and remand to the trial court for further proceedings consistent with this opinion.[5]

---

[5] We note that RBC also argues that the trial court erred by relying on the GAL's recommendation regarding the reasonableness of the fee schedule in the trust agreement. A superior court has the discretion under RCW 11.88.090(1) and 11.96A.160(1) to appoint a GAL as an agent of the court in order to protect the interests of the incapacitated person. *Matthews*, 156 Wn. App. at 210. A GAL is not a formal expert, but may be appointed as a nontraditional expert in a guardianship case. *In Re Guardianship of Stamm*, 121 Wn. App. 830, 837-38, 91 P.3d 126 (2004). A superior court has discretion under ER 702 to permit a GAL to testify to his or her opinion if the court is persuaded that the GAL's testimony will assist the court. *Stamm,* 121 Wn. App. at 837.

Here, the superior court did not abuse its discretion in appointing the GAL to offer a recommendation regarding the reasonableness of the fee schedule in the fee agreement. However, in further proceedings regarding the reasonableness of the fee schedule in the trust agreement, the superior court may only rely on the GAL's recommendation in so far as the superior court is persuaded that the GAL's testimony will assist the court in evaluating the five *Powell* factors.

CONCLUSION

Here, the superior court abused its discretion by failing to approve RBC's 2013-2014 trustee fees that were consistent with the fee schedule in the trust agreement. Further, the superior court abused its discretion by prospectively modifying the fee schedule without evaluating the reasonableness of the fee schedule under the five *Powell* factors. We reverse and remand to the superior court for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

JOHANSON, P.J.

MELNICK, J.